Henry Morris SANDY *v.* Lloyd SALTER

76-132 541 S.W. 2d 929

Opinion delivered October 18, 1976

*Pickens, Boyce, McLarty & Watson,* by: *James A. McLarty,* for appellant.

*Harkey, Walmsley & Belew,* by: *James M. Belew,* for appellee.

GEORGE ROSE SMITH, Justice. This is a workmen's compensation case. The claimant, Henry Sandy, suffered a back injury while he was working as a carpenter in the remodeling of a house owned by the appellee, Lloyd Salter, and his wife. The key question is whether the claimant was or was not an employee of the Salters. This appeal is from a circuit court judgment sustaining the Commission's finding that Henry Sandy was not such an employee.

The facts are singularly free from dispute. Salter is engaged in the trucking business. He and his wife decided to add a room to each end of their home. They had no plans or specifications except a photograph, clipped from a magazine, of a house which they wanted their home to resemble. Salter provided the money for the project but left the details pretty much to his wife. During the remodeling, which extended over a period of several months and cost from $20,000 to $25,-000, the Salters lived elsewhere "up on the highway," but one or the other went down to the project two or three times a day, because they were raising chickens there.

For some ten years the claimant had worked for (or with) his older brother, Dewayne Sandy, in the building trade. The Salters had confidence in Dewayne and turned the remodeling over to him. There was no discussion about how long it would take or what it would cost. Dewayne simply agreed to do the work and to make the house look as much as possible like the magazine picture.

When Dewayne was free to begin the job, he brought with him his brother (the claimant) and another carpenter, both of whom had been working under his supervision. Dewayne hired the two men and supervised them. He was responsible for the progress and completion of the project. He kept a record of each man's working hours. He selected and ordered all the materials that were used.

The Salters, who had no knowledge of building or carpentry, exercised no direct supervision over the work. The three workmen were paid by the hour, with Dewayne, as the foreman, receiving the highest wages. Mrs. Salter wrote the checks for labor and materials, relying upon Dewayne's time records and choice of materials. The Salters believed, and the proof indicates, that they could have terminated the project if they had run out of money and that they could have discharged any or all of the workmen if their work had been unsatisfactory. The relationships that we have described were in existence when the claimant was hurt on the job.

In determining whether a workmen's compensation claimant was an employee we have substantially followed the common-law rule that the governing test is whether the asserted employer had the right to control the claimant in his work. *Clarksville Meat Co.* v. *Brooks,* 237 Ark. 717, 375 S.W. 2d 671 (1964). That test was recognized by the Commission in the case at bar. In reaching its conclusion that the Sandy brothers were not subject to Salter's control the Commission pointed out that (1) Salter did not direct how the end result was to be accomplished, (2) Dewayne hired the other two workmen, (3) Dewayne purchased the materials without Salter's approval, and (4) the other workers took their directions from Dewayne.

On the other hand, as the Commission noted, (1) the Salters paid the workmen's wages, (2) the Salters apparently could have discharged Dewayne without liability, and (3) the risk of an increase in the cost of materials was borne by the Salters, not by Dewayne. In seeking a reversal the appellant stresses our recognition that the employer's power to terminate the employment at will is a strong circumstance tending to show the subserviency of the workman. *Hollingsworth & Frazier* v. *Barnett,* 226 Ark. 54, 287 S.W. 2d 888 (1956).

Upon the basic issue of "control," as that conception was developed at common law in master and servant cases, the proof presents a close and difficult question; but we cannot say that there is no substantial evidence to support the Commission's decision. Our anxiety, however, is greatly lessened by a fresh point of view that has won some acceptance after it was first suggested, apparently, by Professor Larson, who of course is a recognized authority upon workmen's compensation's law. We have not had occasion to consider this theory before, because this is apparently the first case to reach us in which the claimant's injury had no connection with the employer's regular business — here Salter's trucking business. Such injuries are not ordinarily compensable, because the statutory definition of an employee excludes one whose employment is casual and not in the course of the employer's regular business. Ark. Stat. Ann. § 81-1302 (b) (Repl. 1960). Here the claimant's employment, extending over a period of months, can hardly be said to have been "casual."

Larson makes the point that the recognition of control as the governing test of the employment relationship arose in common-law tort cases, where the question was whether the master was vicariously liable for his servant's negligence. In that setting the master's right to control his servant's detailed activities was highly relevant to the question whether the master ought to be liable. The issue, however, was the master's liability for injuries inflicted by the servant *upon third persons*. By contrast, the issue in compensation cases is the master's liability for injuries *sustained by the employee*. Larson, Workmen's Compensation Law, § 43.42 (1973).

Larson reasons that in a case such as the one at bar, the law should consider, in determining whether an employer-employee status exists, not only the matter of control but also the relationship between the claimant's own occupation and the regular business of the asserted employer. Larson, §§ 43.50 and 43.51. With regard to the latter aspect of the problem, two considerations have weight: First, how much of a separate calling or profession is the claimant's occupation? How skilled is it? To what extent may it be expected to carry its own share of the workmen's compensation responsibility? Second, what relationship does the claimant's work bear to

the regular business of the asserted employer? Is there a continuous connection or only an intermittent one, or is there no connection at all? See Larson, § 43.52.

The case at hand confirms the soundness of Larson's approach to the problem. If the power to control is alone to be taken into account, the Salters might be found to have had that power, owing to their authority to dismiss the workmen at will. Yet there was certainly no actual power to control the men in the details of their work, for the Salters knew nothing about how to go about remodeling a home.

By contrast, Dewayne Sandy was a skilled specialist in the building trade. He employed his own crew, with whom he had worked in the past, fixed their wages, kept track of their working time, and directed their activities on the job. Dewayne alone had the expertise to maintain the progress of the work by selecting and arranging for the delivery of all necessary materials. In the circumstances it seems plain that the duty to obtain workmen's compensation insurance, and the responsibility for failing to obtain it, ought to rest upon Dewayne rather than upon the Salters. It is altogether unlikely that the average homeowner, in arranging for his house to be remodeled, would have the remotest idea that he should obtain workmen's compensation insurance if he pays his "contractor" by the hour instead of by the job. Thus the facts in this case demonstrate the soundness of Professor Larson's suggested two-way approach to the peculiar situation presented here.

Affirmed.

We agree. HARRIS, C.J., and FOGLEMAN and JONES, JJ.