*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0129p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

TERRY ROSS,

*Plaintiff-Appellant,*

*v.*

No. 04-5051

WALL STREET SYSTEMS and GULF INSURANCE COMPANY,

*Defendants-Appellees.*

>

―――――――――――

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 03-00387—John G. Heyburn II, Chief District Judge.

Argued: February 2, 2005

Decided and Filed: March 14, 2005

Before: SILER, BATCHELDER, and DAUGHTREY, Circuit Judges.

―――――――――――

## COUNSEL

**ARGUED:** William Kirk Hoskins, Louisville, Kentucky, for Appellant. John G. McNeill, LANDRUM & SHOUSE, Lexington, Kentucky, Licha H. Farah, Jr., CLARK & WARD, Lexington, Kentucky, for Appellees. **ON BRIEF:** William Kirk Hoskins, Louisville, Kentucky, for Appellant. John G. McNeill, LANDRUM & SHOUSE, Lexington, Kentucky, Licha H. Farah, Jr., R. David Clark, CLARK & WARD, Lexington, Kentucky, for Appellees.

―――――――――――

## OPINION

―――――――――――

MARTHA CRAIG DAUGHTREY, Circuit Judge**.** The plaintiff, Terry Ross, was seriously injured in a four-vehicle chain-reaction collision on October 24, 2000, when his pickup truck was rear-ended by a tractor-trailer rig driven by Richard Martin, in which the ostensible owner/operator, Willie Conway, was a passenger. Because the Conway rig carried a placard indicating that it was leased to Wall Street Systems, a long-distance hauling company, Ross sued both Wall Street Systems and its insurance carrier, Gulf Insurance Company, in Kentucky state court, claiming negligence.

The defendants removed the case to federal court on the basis of diversity jurisdiction and filed a motion for summary judgment. In support of the motion, they produced evidence that the lease executed between Willie Conway and Wall Street Systems on September 19, 2000, had been

1

unilaterally terminated by Wall Street Systems on September 25, 2000, a month before the accident involving plaintiff Ross. The termination process complied with a provision in the lease that permitted unilateral termination on one day's notice sent in writing to the address provided in the lease agreement. There is no dispute that the notice sent by Wall Street systems complied with the terms of the lease. The dispute is over whether it was effective.

The decision to terminate came as a result of Willie Conway's inability to produce proof of supplemental ("bobtail") insurance for the tractor. Wall Street Systems offered to secure it for him, with the understanding that the company would be reimbursed when Conway checked in to pick up his first load. In the process of securing the supplemental insurance, however, company officials learned for the first time that Willie Conway's vehicle was actually titled to his mother, Evelyn Conway. A call to the regional dispatch office also turned up information that Conway had never reported in to accept a load. As a consequence, Wall Street Systems sent a certified letter to Evelyn Conway at the address specified in the lease, giving notice of termination. The letter requested the immediate return of Wall Street Systems's placard and the other documentation provided under the lease. The Conways had not complied with that demand at the time of the accident a month later, and the tractor still bore Wall Street Systems's placard when the collision took place.

Although the plaintiff's theories of recovery were not clearly stated in the complaint, the defense theory was obvious: the lease, if one had ever come into existence, had been terminated a month prior to the accident, and there was no basis on which to hold either Wall Street Systems or Gulf Insurance liable for Ross's injuries. Ross nevertheless maintained that liability could be predicated on the "current leasing practices" of national trucking companies such as Wall Street Systems, arguing generally that the public should be able to rely on the fact that Conway appeared to be operating under the auspices of Wall Street Systems.

The plaintiff contended specifically that Wall Street Systems was liable due to the presence of its placard on the Conway vehicle at the time of the accident. In the past, some courts followed a doctrine of "logo liability," under which the presence of a carrier's government-issued placard created an irrebuttable presumption that the lease continued in effect. *See*, *e.g.*, *Rodriguez v. Ager*, 705 F.2d 1229, 1236 (10th Cir. 1983). However, the underlying ICC regulations have changed, and this rule is no longer in effect. In *Jackson v. O'Shields*, 101 F.3d 1083, 1088 (5th Cir. 1996), for example, the Fifth Circuit held that "the presence of [carrier's] placard on the [leased vehicle] and the lack of a termination receipt did not alone keep the otherwise-terminated agreement alive." As was the case in *Jackson*, Wall Street System's agreement with Willie Conway stipulated that Conway, as the independent contractor, bore the burden of removing the placards and returning them to Wall Street. Ross argued that *Jackson* should be interpreted as relieving the carrier of logo liability only if the carrier made "conscientious" efforts and "took reasonable steps" to reclaim the placards and insurance card. *Jackson*, 101 F.3d at 1088. In *Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 14-15 (1st Cir. 1999), however, the First Circuit held that when the lease places the burden of retrieval on the independent contractor, a letter from the carrier terminating the lease and requesting return of the placards is enough to extinguish the carrier's vicarious liability. We likewise hold that, where the lease provides that the contractor is responsible for the return of the placards, a letter demanding the return constitutes "reasonable steps." "The absence of a valid lease precludes imposition of vicarious liability against" Wall Street Systems, and the presence of its placards on the Conway tractor at the time of the accident "does not constitute grounds for imposing vicarious liability". *Graham*, 314 F.3d at 15.

In addition to claiming that the lease was still valid, Ross alleged that Wall Street Systems should be liable under what resembles a theory of negligent entrustment. He argued that because Conway "could not have been on the road" without the Wall Street placard and insurance card, Wall Street Systems should be liable. There is no evidence indicating that Wall Street Systems was negligent, but even if their original entrustment to Conway was negligent, any potential liability

ended when the lease contract was terminated. *See Graham*, 314 F.3d at 14 (holding the cancellation of a lease relieves carrier of any liability under a negligent entrustment theory).

In the wake of the summary judgment grant against him, Ross brought a motion for reconsideration based on the theory that Conway's coverage by Wall Street Systems's insurance had a 35-day grace period. The federal government mandates that authorized carriers such as Wall Street Systems must assume full financial responsibility for any leased vehicles. 49 C.F.R. § 387.1. In order to assure that leased vehicles are covered by an authorized carrier's insurance, the government requires carriers to add the form MCS-90 endorsement to their insurance policies. 49 C.F.R. § 387.15. The MCS-90 endorsement specifies that insurance coverage "will remain in effect continuously until terminated." 49 C.F.R. § 387.15. The MCS-90 endorsement further requires a 35-day grace period after the termination of the insurance policy. At issue here is whether the 35-day grace period in insurance coverage applies to termination of a lease between the authorized carrier and the independent contractor, or only to cancellation of an insurance policy between the insurance company and the authorized carrier. The district court found that the 35-day grace period did not apply to the situation at hand because the grace period takes effect only when the insurance policy itself, not merely the lease, is terminated. We agree.

The MCS-90 endorsement is part of the insurance policy between the insurance company (Gulf Insurance) and the carrier (Wall Street Systems). Although the endorsement extends coverage to the leased truck, the endorsement is not a part of any contract with the operator of the truck. The text of the MCS-90 clearly applies the 35-day grace period to the "cancellation of this endorsement," *i.e.*, the cancellation of the insurance policy itself. This interpretation is fully consistent with the provision in 49 C.F.R. § 387.7 that explicitly applies the grace period to terminations of "*policies* of insurance*,*" not to the termination merely of coverage.

Section 387.7 further provides that "cancellation may be effected by the insurer or the insured motor carrier." There is no dispute that "insurer" refers to the insuring company, here Gulf Insurance, but Ross argues that the term "insured motor carrier" includes the leased vehicle. "Motor carrier" is defined as including, but "not limited to, a motor carrier's agent, officer, or representative." 49 C.F.R. § 387.5. If, *arguendo*, the operator of a leased vehicle is an "insured motor carrier," then the operator would be able to terminate its policy with the insurance company. Here however, there was no policy between the insurance company and the Conways. The only contractual relationship involving insurance was between Gulf Insurance and Wall Street Systems. There was no contractual relationship between Gulf Insurance and Conway; therefore no policy was terminated, and there was no 35-day grace period applicable to the Conways' rig.

## *CONCLUSION*

For the reasons set out above, we AFFIRM the judgment of the district court.