**William H. BROWN, as Special Administrator of the Estate of Tiffany Nicole Brown, Deceased, Plaintiff**

v.

**TRUCK CONNECTIONS INTERNATIONAL, INC.; Penske Truck Leasing Co., L.P.; Donald G. Davis; and Robert Godwin, Jr., Defendants.**

No. 4:06CV00449 JLH.

United States District Court, E.D. Arkansas, Western Division.

Nov. 16, 2007.

James F. Swindoll, Law Offices of James F. Swindoll, Little Rock, AR, Stephen B. Bennett, Attorney at Law, Sherwood, AR, for Plaintiff.

Edward T. Oglesby, Oglesby Law Firm P.A., Doralee Idleman Chandler, Matthews, Sanders & Sayes, Jerry Jon Sallings, Wright, Lindsey & Jennings, Little Rock, AR, for Defendants.

## *OPINION AND ORDER*

J. LEON HOLMES, District Judge.

This action arises out of a motor vehicle accident that occurred on or about February 15, 2006, on Interstate 40 in Arkansas. Tiffany Nicole Brown was traveling eastbound on the inside lane when she began passing a truck driven by Donald G. Davis in the outside lane. Allegedly, Davis, by changing lanes without warning and without a proper signal, forced Brown out of her lane and into the median. She then re-entered the eastbound lanes of traffic when she collided with a truck driven by Robert Godwin, which allegedly caused her to cross the median and enter lanes of westbound traffic, where an oncoming tractor-trailer struck her vehicle. Brown was fatally wounded in the collision.

Penske Truck Leasing Co. owned the trucks driven by both Davis and Godwin. Each truck bore a Penske logo as well as Department of Transportation numbers registered to Penske. The trucks were operating under a Penske Interstate Commerce Commission certificate of authority. Truck Connections International ("TCI") was transporting the Penske trucks pursuant to a Motor Carrier Transportation Agreement under which TCI contracted with Penske to transport Penske-owned vehicles as requested by Penske. TCI hired Davis and Godwin to transport the trucks.

William Brown, as special administrator for the estate of Tiffany Brown, commenced this action on April 12, 2006, alleging negligence, imputed negligence, as well as negligent hiring and supervision against Penske, TCI, Davis, and Godwin. The Court has jurisdiction pursuant to 28 U.S.C. § 1332 as Brown was a resident of Arkansas, none of the defendants are residents of Arkansas, and the amount in controversy exceeds $75,000. Before the Court is defendant Penske's motion for summary judgment. For the following reasons, that motion is GRANTED.

## I.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir.2005). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party carries its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting FED.

R. Civ. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

## II.

Penske argues that it is immune from liability because TCI was an independent contractor hired by Penske and thus not a Penske employee. According to Penske, it is therefore not liable for the allegedly negligent acts of the employee drivers hired by TCI, Davis and Godwin. Brown proposes several theories by which he claims Penske is liable. Specifically, Brown argues that: (1) whether or not TCI was an employee or independent contractor is a question of fact for the jury, (2) Penske had a non-delegable duty to ensure public safety, (3) Penske is liable for the negligence of Godwin and Davis because they were statutory employees of Penske, (4) Penske can be held liable under the doctrine of logo liability, and (5) Penske has independent liability under both state and federal law.

■ As this is a "diversity action [and] governed by Arkansas state substantive law," *Day v. Case Credit Corp.,* 427 F.3d 1148, 1152 (8th Cir.2005) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)), Brown must either demonstrate that Arkansas law imposes liability on Penske, or that federal law preempts Arkansas law in some manner and independently imposes liability on Penske. The Court will therefore first address Brown's arguments contending that Penske is liable under Arkansas law. First, Brown contends that whether TCI was an independent contrac-

tor or an employee of Penske is a question of fact for the jury. Under Arkansas law, "There is no fixed formula for determining whether a person is an employee or an independent contractor; thus, the determination must be made based on the particular facts of each case." *Arkansas Transit Homes, Inc. v. Aetna Life & Cas.,* 341 Ark. 317, 321, 16 S.W.3d 545, 547 (2000).

■ While Arkansas law looks to several factors to determine whether one is an employee or independent contractor, "the right to control is the principle factor...." *Id.* at 322, 16 S.W.3d at 548. Here, under the contract, Penske had no right to control the specific conduct of TCI that it bargained with TCI to perform. Brown correctly notes that the contract does call for TCI to carry insurance and to deliver Penske's trucks in accordance with Penske's delivery schedule. However, such terms are standard in contracts of this sort. The contract does not designate how TCI is to transport Penske's trucks—specifically, the route TCI was to take, the drivers it was to employ, etc.—which is the substantive performance for which Penske contracted. Because Penske did not have the "right to control" how TCI transported Penske's trucks, there is no genuine factual dispute as to whether TCI was an independent contractor or an employee. Under Arkansas law, TCI was an independent contractor, and Penske is therefore not liable for TCI's actions.

■ Second, Brown contends that Penske had a non-delegable duty to provide safety and financial responsibility to the public. Brown bases its argument on *Restatement (Second) of Torts* § 428, which states:

An individual or corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is

subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.

Brown's argument is unavailing. Brown fails to provide the Court with any Arkansas law—or federal law, for that matter—demonstrating that Penske should be held liable by this section under these circumstances. Furthermore, under the law of Arkansas, transporting a truck down a highway does not "involve unreasonable risk of harm to others." The Supreme Court of Arkansas has stated:

> Black's Law Dictionary ... defines "inherently dangerous" as "danger inhering in instrumentality or condition itself at all times, so as to require special precautions to prevent injury, not danger arising from mere casual or collateral negligence of others with respect thereto under particular circumstances." Of course, no citation of authority is necessary to support the statement that the mere fact that one is injured by a machine, or instrument, does not mean that the machine or instrument is inherently dangerous. It has been said that a product is inherently dangerous where the danger of injury stems from the nature of the product itself. An automobile, driven at a high rate of speed—or without proper brakes—or if at night, without headlights—or if operated by one who is intoxicated—can certainly become a highly dangerous instrument, capable of causing death and crippling injuries. Yet, there is general agreement among the jurisdictions that motor vehicles are not inherently dangerous.

*Walker v. Wittenberg, Delony & Davidson, Inc.,* 241 Ark. 525, 531, 242 Ark. 97, 412 S.W.2d 621, 625 (1967) (citation omitted). While one of Penske's trucks could certainly become a dangerous instrument if operated negligently, transporting a truck down the highway is not an inherently dangerous activity. The truck does not pose a danger at all times, nor does danger of injury does stem from the nature of a truck, such as it does with "dynamite, nitroglycerin, ... explosives, [and] poisons...." *Id.* In fact, Brown specifically alleges that the danger "under [these] particular circumstances" "[arose] from mere casual or collateral negligence" by Godwin and Davis. Under Arkansas law, transporting Penske's trucks down the highway was not an inherently dangerous activity. *Restatement (Second) of Torts* § 428 does not apply. Penske does not have a nondelegable duty by which it is liable to Brown under these circumstances.

■ Given that Brown has failed to demonstrate that Penske is liable under Arkansas law, only preemptive federal law can hold Penske liable. Brown asserts that, under federal law, TCI was a statutory employee of Penske. Department of Transportation regulations define an employee as "any individual ... who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle)...." 49 C.F.R. § 390.5 (2007). This regulation eliminates the distinction between an employee and an independent contractor if the driver is in the course of operating a commercial motor vehicle. Here, Godwin and Davis were operating commercial motor vehicles. However, they were not hired by Penske; rather, TCI was.

Penske contends that the term "individual," within this definition of employee, refers specifically to human beings rather than also to legal persons such as TCI. "Although in ordinary usage both 'individual' and 'person' often refer to an individual human being, 'person' often has a broader meaning in the law," which includes

corporations, companies, associations, firms, partnerships, societies, and joint stock companies. *Clinton v. City of New York*, 524 U.S. 417, 428 n. 13, 118 S.Ct. 2091, 2098, 141 L.Ed.2d 393 (1998) (citation omitted). *But see id.* at 428, 118 S.Ct. at 2098 (ruling that the word "individual" can sometimes be "construed as synonymous with the word 'person' "). On its face, this regulation uses the term "person" when defining employer in the paragraph immediately following the definition of employee. By using a different term to define employer, the language of the regulation itself indicates that in this instance, "individual" and "person" are not synonymous, which further indicates that here, "individual" does refer to human beings and not to corporations or other legal persons. Thus, because TCI was a "person" and not an "individual," it is not a statutory employee of Penske as that term is defined by this regulation.

■ Brown also asserts that the logo liability doctrine holds Penske liable here. This argument is also unavailing. In order to hold Penske liable under the logo liability doctrine, Brown must demonstrate that Eighth Circuit precedent and other federal law supersedes Arkansas law and holds a party to a contract liable under these circumstances. Traditionally, the logo liability doctrine has applied to situations where a lease agreement provides for one party to operate a truck bearing another party's logo for its own use and benefit. *See, e.g., Ross v. Wall Street Systems,* 400 F.3d 478 (6th Cir.2005); *Acceptance Ins. Co. v. Canter,* 927 F.2d 1026 (8th Cir.1991); *Grinnell Mut. Reinsurance Co. v. Empire Fire & Marine Ins. Co.,* 722 F.2d 1400 (8th Cir. 1983). Here, there was no lease. Rather, Penske and TCI entered into a transportation agreement designed to cause TCI to shuttle Penske's trucks from one location to another on Penske's behalf and for Penske's benefit. TCI did not lease Penske's trucks for the purpose of operating them on the highway for its own use.

Furthermore, to the extent courts have applied the logo liability doctrine in the past, further application of the doctrine has been brought into question by the agency from which it originated. The Interstate Commerce Commission created the regulations that courts originally relied on in imposing logo liability. *See* Lease and Interchange of Vehicles (Identification Devices), 3 I.C.C.2d 92, 93 (1986). After the Commission realized this development, it changed the regulations and offered the following commentary:

> We prefer that courts decide suits of this nature by applying the ordinary principles of State tort, contract, and agency law. The Commission did not intend that its leasing regulations would supersede otherwise applicable principles of State tort, contract, and agency law and create carrier liability where none would otherwise exist. Our regulations should have no bearing on this subject. Application of State law will produce appropriate results.

*Id.* According to the agency's own commentary, it does not intend for the logo liability doctrine to preempt valid state law that would otherwise govern and is perfectly suitable for resolving such contract disputes.

The Eighth Circuit in one instance has applied the logo liability doctrine since the 1986 changes in regulations. *Acceptance,* 927 F.2d at 1027. However, in that case it was not disputed that logo liability applied, and there was no discussion of the change in the ICC regulations. *Id.* Brown has not provided, nor has the Court found, a case where the court noted the change in the ICC regulations and still applied the logo liability doctrine. To the contrary, courts that have noted the change in the ICC regulations have rejected the application of

logo liability. *See Ross,* 400 F.3d at 479–80 ("In the past, some courts followed a doctrine of 'logo liability'.... However, the underlying ICC regulations have changed, and this rule is no longer in effect."); *Jackson v. O'Shields,* 101 F.3d 1083, 1086–88 (declining to apply logo liability in "the aftermath of the ICC amendments"); *Graham v. Malone Freight Lines, Inc.,* 948 F.Supp. 1124, 1132–33 & n. 14 (recognizing that in 1986, "the ICC emphasized that liability should not be assigned on the existence of placards alone"); *Saullo v. Douglas,* 957 So.2d 80, 82–86 (Fla.Dist.Ct.App.2007) ("It is clear from the repeated comments of the administrative body itself that the ICC regulations were never intended to impose greater liability on carriers using either leased equipment or an independent contractor than that imposed when a carrier uses its own equipment or employees"); *see also generally* R. Clay Porter & Elenore Cotter Klinger, *The Mythology of Logo Liability: An Analysis of Competing Paradigms of Lease Liability for Motor Carriers,* 33 TRANSP. L.J. 1 (2005–2006). Thus, the logo liability doctrine does not apply, and as noted, Arkansas principles of tort, contract, and agency law do not hold Penske liable for TCI's conduct under these circumstances.

■ Lastly, Brown contends that Penske has independent liability under both state and federal law. However, as noted by Penske, the only support offered by Brown that Penske has independent liability under state and federal law is a deposition, which contains no references to law that does or even could govern this matter. In fact, Larry Cole, the deponent, admitted that at the time of his deposition, he had not yet reviewed the transportation agreement between Penske and TCI. Cole's understanding of the law as stated as an opinion in a deposition is not binding on this Court, nor can it independently impose liability on Penske. Brown asserts

in one sentence that Penske did no due diligence in selecting TCI as an independent contractor, but Brown has offered no evidence to show that Penske was negligent in hiring an independent contractor. Thus, as to Penske's negligence in selecting TCI, Brown has failed to make an adequate showing on a necessary element of the case on which it bears the burden of proof, and Penske is therefore entitled to summary judgment on that point. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

### CONCLUSION

For all these reasons, summary judgment in favor of Penske is proper. Penske's motion for summary judgment is therefore GRANTED. Document # 40.

IT IS SO ORDERED.