2010 Ark. 416

**William KISTNER and William Kistner, Jr., Appellants**

v.

**George T. CUPPLES, Tuffer Enterprises, Inc., and Integrated Distribution, Appellees.**

**No. 09–1349.**

Supreme Court of Arkansas.

Nov. 4, 2010.

340 

Dunham & Faught, P.A., by: James Dunham, Russellville, for appellants.

Barber, McCaskill, Jones & Hale, P.A., by: J. Carter Fairley and Cynthia W. Kolb, Little Rock, for appellee.

PAUL E. DANIELSON, Justice.

Appellants William Kistner and William Kistner, Jr., appeal the order of the Pulaski County Circuit Court granting appellee Integrated Distribution, Inc.'s motion for summary judgment. The Kistners argue on appeal that the circuit court erred in granting summary judgment in favor of Integrated Distribution. We disagree and affirm the order of the circuit court.

On March 14, 2003, Integrated, an authorized motor carrier, entered into a motor-vehicle lease and operating agreement with Lyman Hinson, president of Tuffer Enterprises, Inc., an Arkansas corporation and owner of a commercial truck. The agreement indicated that Lyman Hinson was an independent contractor who would provide equipment and drivers to Integrated to complete a job.

On October 19, 2003, the Kistners were traveling east on Interstate 40 in North Little Rock, Arkansas, when their vehicle was struck from behind by George Cupples, the driver who had been hired to haul trailers owned by Integrated per the agreement between Integrated and Hinson. As a result of the accident, the Kistners' vehicle was destroyed, and the Kistners sustained multiple injuries. On September 12, 2008, the Kistners filed a complaint against Cupples, Tuffer, and Integrated, alleging that Cupples's negligence was the proximate cause of the accident and that both Tuffer and Integrated were also responsible for that negligence as his employers.[1]

Integrated answered the complaint and then filed a motion for summary judgment on January 1, 2009. In its motion for summary judgment, Integrated asserted that it was not liable for the actions of Cupples because the agreement between Integrated and Hinson established an independent-contractor relationship and Cupples was not an employee of Integrated. Furthermore, Integrated argued that, at the time of the accident, Cupples was not performing any service for Integrated as he was operating the truck without a trailer attached (also known as "bobtailing"). The Kistners responded and filed their own summary-judgment motion.

The circuit court held a hearing on May 4, 2009, on the cross-motions for summary judgment. On May 6, 2009, the circuit court entered its order granting summary judgment in favor of Integrated and denying the Kistners' motion for summary judgment. The Kistners timely appealed, and we now turn to the merits of their argument.

The Kistners contend that the circuit court erred in granting summary judgment in favor of Integrated because feder-

---

1. The original complaint was filed on December 2, 2005; however, it was dismissed without prejudice on October 1, 2007.

al law preempts state common-law defenses, that drivers of leased vehicles are "statutory employees" as a matter of law, and that, even under traditional notions of common law, Integrated is vicariously liable for the acts of Cupples. Integrated avers that employment status is to be determined under state law; that drivers of leased vehicles are no longer considered statutory employees; that Cupples, per the agreement and the established independent-contractor relationship, was not an employee of Integrated at the time of the accident; and that, even were a court to determine Cupples was an employee of Integrated, he was acting outside the scope of the agreement at the time of the accident.

■■■ Summary judgment may only be granted when there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *See K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners, LLC,* 373 Ark. 14, 280 S.W.3d 1 (2008). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *See id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *See id.*

■■■ The Kistners first argue that federal law, along with the regulatory framework of the Federal Motor Carrier Safety Administration (FMCSA),[2] preempts state-law concepts of respondeat superior in the instant case and controls the determination of the employment status of Cupples. The FMCSA has specific written lease requirements for a lease made between an authorized carrier and the owner of the equipment. *See* 49 C.F.R. § 376.12. In compliance with the requirements, the lease in the instant case provided, among other things, that "[Integrated] shall have exclusive possession, control, and use of Equipment and shall assume complete responsibility for its operation during this Agreement." *See* 49 C.F.R. § 376.12(c)(1). However, as Integrated argues in its brief, the regulations were amended in 1992 to include the following clarification:

> Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 14102 and attendant administrative requirements.

49 C.F.R. § 376.12(c)(4).

While the Kistners ask this court to conclude that drivers of leased trucks are "statutory employees" of the authorized motor carriers-lessees, the legal authority they cite all date back prior to the 1992 amendment. Specifically, they cite *Simmons v. King,* 478 F.2d 857 (5th Cir.1973) as the leading case for this analysis. However, the *Simmons* court specifically held that

2. The FMCSA adopted the rules and regulations that had been promulgated by the former Interstate Commerce Commission.

*[s]ince under the lease [the carrier-lessee] assumed exclusive possession, control, and use of the vehicle and responsibility to the public* then [the driver] became his statutory employee, and as such [the carrier-lessee] was vicariously liable as a matter of law for the negligence of the [driver].

478 F.2d 857, 867 (emphasis added). The *Simmons* court was clearly relying on the exact language that section 376.12(c)(4) now specifically instructs should not affect whether the driver provided by the lessor is an independent contractor or an employee of the authorized carrier-lessee. In light of the 1992 amendment, it seems clear that the "statutory employee" interpretation of the regulation that was used in the past is no longer a proper interpretation. *See Bays v. Summitt Trucking, LLC,* 691 F.Supp.2d 725 (W.D.Ky.2010) (quoting *Penn v. Va. Int'l Terminals, Inc.,* 819 F.Supp. 514, 523 (E.D.Va.1993)) (finding that the 1992 amendment renders older cases that held lessee-carriers strictly liable for owner-operators' negligence "a misrepresentation of the regulation").

 We now turn to our state law for guidance. Integrated argues, as it did below, that the agreement between it and Tuffer and/or Lyman Hinson established an independent-contractor relationship with Tuffer and/or Lyman Hinson and his drivers, which included Cupples. There is no fixed formula for determining whether a person is an employee or an independent contractor; thus, the determination must be made based on the particular facts of each case. *See Ark. Transit Homes, Inc. v. Aetna Life & Cas.,* 341 Ark. 317, 16 S.W.3d 545 (2000). The following factors are to be considered in determining whether one is an employee or independent contractor:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Dickens v. Farm Bureau Mut. Ins. Co.,* 315 Ark. 514, 517, 868 S.W.2d 476, 477–78 (1994) (citing *Blankenship v. Overholt,* 301 Ark. 476, 786 S.W.2d 814 (1990) (citing Restatement (Second) of Agency § 220)).

 We have long held that an independent contractor is one who contracts to do a job according to his own method and without being subject to the control of the other party, except as to the result of the work. *See Ark. Transit Homes, supra; Johnson Timber Corp. v. Sturdivant,* 295 Ark. 622, 752 S.W.2d 241 (1988); *Moore v. Phillips,* 197 Ark. 131, 120 S.W.2d 722 (1938); *W.H. Moore Lumber Co. v. Starrett,* 170 Ark. 92, 279 S.W. 4 (1926). The governing distinction is that if

control of the work reserved by the employer is control not only of the result, but also of the means and manner of the performance, then the relation of master and servant necessarily follows. But if control of the means be lacking, and the employer does not undertake to direct the manner in which the employee shall work in the discharge of his duties, then the relation of independent contractor exists. *See Ark. Transit Homes, supra* (citing *Massey v. Poteau Trucking Co.*, 221 Ark. 589, 254 S.W.2d 959 (1953)). The right to control is the principal factor in determining whether one is an employee or an independent contractor. *See id.* It is the right to control, not the actual control, that determines the relationship. *See id.* (citing *Taylor v. Gill*, 326 Ark. 1040, 934 S.W.2d 919 (1996)).

The agreement in the instant case listed Lyman Hinson as an independent contractor. He is referred to as "Contractor" in the agreement, and Integrated is referred to as "IDI." Aside from the language complying with 49 C.F.R. § 376.12(c)(1), the agreement also contained the following pertinent language:

> 1. EQUIPMENT: Contractor represents that he has title to, or exclusive use of, or lawful possession plus registration and license in his name of the Equipment identified in the attached Statement of Lease and Receipt for Equipment, and Contractor further represents and warrants that the Equipment is in good, safe and efficient operating condition as required by law and by good practices and shall be so maintained at Contractor's expense. Contractor shall provide Equipment and qualified drivers who have been approved by IDI.
>
> . . . .
>
> 9. COSTS OF OPERATION: Except as otherwise provided herein, Contractor shall pay all costs of operation including but not limited to the items listed in this paragraph
>
> . . . .
>
> (c) Taxes, assessments, premiums and other payments due by reason of the payment by Contractor of wages or other earnings to his employees
>
> . . . .
>
> (f) Deadhead and bobtail liability and property damage while the Equipment is not being operated in the service of IDI
>
> . . . .
>
> 17. INSURANCE AND CLAIMS: IDI maintains public liability and property damage insurance coverage while Contractor is operating under IDI dispatch.
>
> (a) Contractor shall maintain no fault, uninsured motorist coverage required by individual states. If IDI has not been qualified as being self-insured, then Contractor authorizes IDI to reject no fault, uninsured motorist and underinsured motorist coverage from IDI's insurance policy.
>
> (b) Contractor shall maintain a public liability and property damage insurance policy for operation of the Equipment other than under dispatch with an IDI load. This insurance policy shall have a combined single limit of not less than $1,000,000.00 for injury to persons or for damage to property in any one occurrence. This insurance policy shall apply whenever the Equipment is operating either "bobtail" or "deadhead," and shall name IDI as an additional insured, and shall provide for waiver of underwriter's subrogation rights against all insureds, and shall be primary with respect to all insureds. As used in this subparagraph, operating "bobtail" means without a trailer attached. . . . Contractor acknowledges that Contractor shall be

solely responsible for any loss in excess of this insurance policy limit.

. . . .

18. INDEMNITY: Contractor shall defend, indemnify and hold harmless IDI from claims, losses, damages, expenses, attorney's fees, actions and claims for injury to or death of persons and damage to property arising out of or in connection with operations hereunder . . . .

19. WORKER'S COMPENSATION: This Agreement is intended by the parties to create an independent-contractor relationship and not an employer-employee relationship. Neither Contractor nor Contractor's employees or agents or any individual providing any service to Contractor is entitled to worker's Compensation coverage or benefits from IDI. Contractor will provide, prior to commencing operations, a Certificate of Insurance acceptable to IDI for self-employment, including evidence of occupational accident coverage for Contractor and evidence of workers compensation insurance coverage for Contractor's employees, and further providing that 30 day advance written notice of cancellation or modification of the policy shall be given to IDI. Upon receipt of notice of cancellation or modification, IDI may, at its sole discretion, make premium payments to continue the coverage and deduct such payments from settlements or reserve fund or terminate this Agreement.

. . . .

24. UNAUTHORIZED USE OF EQUIPMENT: If Contractor operates Equipment in any manner varying from regulations, or beyond the scope of the operating authority of IDI, or for any other purpose not permitted by this Agreement, then this Agreement, except those provisions relating to indemnification of IDI by contractor, will, at IDI's option, be deemed terminated as of the time that such unauthorized use occurred.

. . . .

26. CONTRACTOR RELATIONSHIPS: In recognition of the independent-contractor relationship which exists between the parties, the parties acknowledge that Contractor has the right to determine the manner and means of performing all haulage hereunder, provided, however, that when a load is accepted by Contractor, the haulage will be performed in compliance with laws and regulations and in accordance with the requirements of the shipper and consignee. The parties acknowledge that their respective acts and omissions in their performances under this Agreement are only to be construed, received and acted upon by the other in the context of the independent-contractor relationship provided for herein.

Additionally, "Addendum A" to the agreement again specified that "Contractor provides: Bob Tail/Unlading Insurance and O/A or Workers Compensation Insurance."

It is clear from the agreement that the intent of both parties was to create an independent-contractor relationship. Tuffer was to provide Integrated with qualified drivers, pay for the majority of operating costs, and specifically recognized its independent-contractor relationship. In addition to the agreement, Integrated also submitted with its summary-judgment[10] motion an affidavit of Mike Moon, Vice President of Human Resources at Wagner Industries, for which Integrated was a wholly owned subsidiary at the time of the accident at issue here. Moon indicated that Integrated did not authorize Tuffer or its drivers to accept money on its behalf; Integrated paid Tuffer directly for the work performed and not its drivers; Integrated did not control the routing of

trucks, but paid by miles; Integrated owned the trailers to be hauled by Tuffer and did not pay for the maintenance or repair of the equipment owned by Tuffer; Tuffer was to provide workers' compensation benefits for its drivers; and, Integrated provided a removable sign that included its Department of Transportation identification number for use while its loads were being hauled rather than requiring Tuffer to paint or maintain any other identification on its trucks. Moon's affidavit supports Integrated's contentions that Tuffer, along with its driver, was an independent contractor and that Integrated did not have the "right to control" the substantive performance of the contract.

This holding is consistent with a holding of an Arkansas federal district court in *Brown v. Truck Connections Int'l, Inc.,* 526 F.Supp.2d 920 (E.D.Ark.2007). In *Brown,* Penske Truck Leasing Company contracted with Truck Connections International (TCI) to transport the Penske-owned vehicles. *See id.* After a fatal collision, suit was brought against Penske, TCI, and the two drivers. *See id.* The court found that Penske had no right to control the specific conduct of TCI; that although the contract required TCI carry insurance and to deliver the Penske trucks in accordance with Penske's delivery schedule, such terms are standard in that type of contract; and that Penske does not designate how TCI is to transport the trucks, specifically, the route to take, or the drivers to employ. *See id.* Accordingly, the court held that Penske did not have the "right to control" how TCI transported Penske's trucks and there was no genuine issue as to whether TCI was an independent contractor or an employee. *See id.* Therefore, Penske was not held liable for the allegedly negligent acts of the drivers hired by TCI. *See id.*

Integrated, much like the relationship between Penske and TCI in *Brown, su-*

*pra,* did not control how Tuffer was to haul its trailers or the routes they were to take, as that was the substantive performance for which Integrated contracted. In addition, the agreement certainly establishes that Integrated was most definitely not in control when Tuffer's drivers were "bobtailing." As noted in the agreement, bobtailing means operating without a trailer attached. Per the agreement, under costs of the operation, Tuffer was to pay for "bobtail liability and property damage while the Equipment [was] not being operated in the service of IDI." At the time of the accident, Cupples was no longer hauling a load for Integrated. He was operating the truck without a trailer attached; he was "bobtailing." Therefore, per the agreement, Cupples was no longer operating in the service of Integrated.

For these reasons, we conclude that summary judgment in favor of Integrated was proper, and we affirm the order of the circuit court.

Affirmed.