KARCHER CANDY COMPANY *v.* HESTER.

4-6859            163 S. W. 2d 168

Opinion delivered June 22, 1942.

*Fred A. Isgrig* and *Carl E. Langston,* for appellant.

*E. H. Bostic, Guy E. Williams* and *Wm. J. Kirby,* for appellee.

HOLT, J. August 13, 1941, Rex Chastain, a minor, sixteen years of age, while working as a helper on a beer truck belonging to appellant, Karcher Candy Company, was fatally injured.

August 16, 1941, the Karcher Candy Company filed with the Workmen's Compensation Commission "Em-

ployer's First Report of Injury," in which it stated that Rex Chastain was an employee of the candy company at the time of his injury and death, and on the back of this report is this statement: "Employee was hired by L. D. Montgomery, one of our truck drivers, as a helper on his truck and he was paid by Mr. Montgomery."

The candy company's insurance carrier resisted the claim before the Workmen's Compensation Commission on the following grounds: "1. Claimant not an employee of Karcher Candy Company. 2. Claimant had no surviving dependents. 3. If partial dependency exists, it is not sufficient to warrant the payment of minimum set out in the act."

The Commission held that Rex Chastain, at the time of his injury and death, was an employee of the Karcher Candy Company, but denied compensation on the ground that he had no dependents.

Mrs. Lona Mae Hester, mother of Rex Chastain, filed petition for rehearing before the Commission on two grounds: (1) that the Commission erred in holding that Chastain was an employee of the Karcher Candy Company; (2) that the Commission erred in holding that claimant was not entitled to compensation because there was no dependency upon the deceased employee."

From the order of the Commission denying Mrs. Hester's petition for rehearing, an appeal was prosecuted to the Pulaski circuit court, second division. Upon a hearing on this appeal, the circuit court reversed the findings and order of the Commission and dismissed the cause, holding that Rex Chastain was not an employee of the Karcher Candy Company at the time of his fatal injury and that the Commission was without jurisdiction. Appellant comes here and seeks to uphold the jurisdiction and order of the Workmen's Compensation Commission.

The essential facts presented are not in dispute. The sole question for determination, as stated by appellee, is: "Was Rex Chastain, under the circumstances of this case, an employee of the appellant, Karcher

Candy Company, within the meaning of our Workmen's Compensation Act, at the time he was killed while working on one of its beer trucks as the driver's helper?''

Section 2 (b) of act 319 of 1939, the Workmen's Compensation Act, provides: '' 'Employee' means any person, including a minor whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, written or oral, express or implied, but excluding one whose employment is casual and not in the course of the trade, business, profession or occupation of his employer. . . .''

The essential facts presented are: Mrs. Hester testified that her son, Rex Chastain, was working for the Karcher Candy Company at the time of his death. He began work about two months before he was killed and earned $6 a week.

Frank J. Iseman, vice-president and secretary of the Karcher Candy Company, testified: "Q. Mr. Iseman, was Rex Chastain working for the Karcher Candy Company when he was killed in August? A. Not directly. Q. Not directly—just what do you mean by not directly? A. Well, the boys that drive these trucks have authority to pick up help whenever they need it and they pay for the use of them out of their own pockets because they are on a commission—the more they sell the bigger their pay will be. Q. But he was working for the Karcher Candy Company with your knowledge and consent? A. Yes, sir, on the truck. Q. And with your knowledge and consent? A. Yes, sir. . . . Q. And you did say he was considered an employee? A. Yes, indirectly.''

He further testified that the candy company paid no unemployment compensation on Rex Chastain, but paid it on other employees and that the truck driver had the authority to hire and discharge boys working in the same capacity as Rex. At one time the candy company paid Rex direct for a few hours services. At the time Rex lost his life ''he was helping Montgomery make deliveries off the truck.''

He further testified: ''Q. But you did pay these drivers enough commission so that they could hire these

helpers? A. Yes, sir, we did. Q. It is a universal custom of these people to hire and fire, but still they are considered employees of the company? A. It is a custom. . . . Q. Did you recognize, or your company recognize, the fact that a driver of one of these trucks was unable to do the work and needed the helper? A. Yes, sir. Q. And for that reason you paid him enough salary or commission to hire a helper? A. Yes, sir. Q. And you left it to him—that was the custom? A. Yes, sir. Q. The help would come to your warehouse with the truck driver—come on the premises with him? A. At times he did. . . . Q. Did you have actual knowledge that this boy was acting as Montgomery's helper? A. Yes, sir. Q. Did you know he was acting in that capacity? A. Yes, sir.'' All truck drivers were not required to hire helpers; the company was interested in results, but if the drivers have more deliveries than they can make without a helper, ''then you want them to have a helper? A. Yes, sir.''

L. D. Montgomery, the driver of the truck from which Rex Chastain fell and was killed, testified: ''Q. Mr. Montgomery, did you hire Rex to help you? A. Yes, sir. Q. What were you paying him? A. One dollar a day and his dinner. Q. Did he work regular? A. Yes, sir. Q. Was he a good hand? A. Yes, sir. Q. Just what kind of arrangements did you have with the Karcher Candy Company in regard to these helpers? A. Well, we were making three cents a case and we didn't feel like we could hire a helper, so us boys got together and got the boss to give us a raise, so in about two weeks, he gave us a raise—one cent a case, and told us to get a boy to work regularly. He said that was the reason he was giving us a penny on the case so we could give that to the boy to help us. Q. And you hired Rex Chastain to help you? A. Yes, sir.''

We think it clear from the testimony that the relationship of employer and employee, or master and servant, existed between appellant candy company and Rex Chastain within the terms of the act, and that the trial court erred in holding otherwise.

It is undisputed that appellant's employee and truck driver, Montgomery, had been directed by appellant to employ the necessary help in his beer deliveries. The cost of delivery was a part of the sale price of the beer. Appellant knew that Montgomery had employed Rex as a helper and the primary purpose of this employment was for the benefit of appellant. Appellant not only knew of, and approved, this employment but allowed Montgomery an additional one cent on each case that he delivered, out of which, Montgomery was directed to pay his helper, Rex Chastain, for services which Chastain was directly performing for the benefit of appellant candy company.

The fact that appellant had given to Montgomery, the truck driver, the privilege to hire and discharge his helper is not sufficient to destroy the relationship of employer and employee between appellant and Rex Chastain, the facts remaining that Rex was performing services for the benefit of appellant and with appellant's knowledge and consent.

In *Western Union Telegraph Company* v. *Lillard*, 86 Ark. 208, 110 S. W. 1035, 17 L. R. A., N. S. 836, it is held (quoting headnote No. 2): "The relation of master and servant between two persons may be shown by proving that the one performs services for the other." In this case is cited with approval *St. L., I. M. & S. Ry. Co.* v. *Hendricks, Admr.*, 48 Ark. 177, 2 S. W. 783, 3 Am. St. Rep. 220, in which this court said: "Indeed, it would be difficult, in most of these cases, to prove the relation of master and servant except by the fact that the one is known to perform service for the other, or from their course of dealing."

In 35 American Jurisprudence 450, § 8, the textwriter says: "The relationship of master and servant or employer and employee is a contractual relationship. As between the parties themselves, at least, there must be something to indicate on the part of the supposed master or employer that the supposed servant or employee is to act for him subject to his control, and such supposed employee or servant must act or agree to act in the

other's behalf. In this respect, the rules applicable to the creation and existence of the relationship of principal and agent are equally applicable. The relationship may be created by express contract, but this is not essential; it may be created as well by conduct which shows that the parties recognize that one is the employer, or master, and that the other is the employee or servant. Moreover, when one is sought to be held responsible for the tortious act of another under the principle *respondeat superior,* the question of responsibility will not depend entirely upon the existence of some actual contractual relationship of master and servant. It is sometimes allowable to prove the relation of master and servant by the fact that one performs service for another.'' In support of this text the Lillard case, *supra,* is cited.

And Mr. Schneider in volume 1, second edition, of his Workmen's Compensation Law, p. 204, § 22, announces the rule in this language: ''The agent who with authority express or implied, employs help for the benefit of his principal's business, thereby creates the relation of employer and employee between such help and his principal. So it has been held that where a driver, employed to solicit sales of beer and make delivery, was permitted to employ helpers, a helper who was injured while in the performance of his duty was entitled to compensation from the brewery.''

For the error indicated, the judgment is reversed, and the cause remanded with directions to proceed in a manner not inconsistent with this opinion.