## ARKANSAS TRANSIT HOMES, INC. *v.*
## AETNA LIFE & CASUALTY

99-1123                                                16 S.W.3d 545

Supreme Court of Arkansas
Opinion delivered May 18, 2000
[Petition for rehearing denied June 22, 2000.]

John C. Ward, Judge;

*Kemp, Duckett, Spradley, Curry & Arnold*, by: *James M. Duckett*, for appellant.

*Law Office of W. J. Walker*, by: *Steven R. Davis*, for appellee.

DONALD L. CORBIN, Justice. Appellant Arkansas Transit Homes, Inc., is a common carrier in the business of transporting mobile homes in interstate commerce. In February 1987, Appellant applied for workers' compensation insurance coverage through the Arkansas Assigned Risk Pool. Appellee Aetna Life and Casualty was assigned to provide coverage to Appellant. Appellee issued a policy for the years February 7, 1991, to February 7, 1992, and March 13, 1992, to February 7, 1993. A subsequent audit of Appellant's payroll records revealed that additional premiums were owed for those years. Appellant refused to pay the additional amounts, and Appellee filed suit in the Pulaski County Circuit Court. The issue was whether certain truck drivers retained by Appellant were employees or independent contractors. The trial court found that they were employees and ordered Appellant to pay insurance premiums in the amount of $108,223.21, plus costs and attorney's fees. This case was certified to us from the Arkansas Court of Appeals, as presenting an issue of substantial public interest. Hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(4). We affirm.

■ For its sole point for reversal, Appellant argues that the trial court erred in ruling that the truck drivers were not independent contractors. Our standard of review on appeals from bench trials is whether the trial judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *See* Ark. R. Civ. P 52(a); *Neal v. Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* We view the evidence in a light most favorable to the appellee, resolving all inferences in favor of the appellee. *Id.* Disputed facts

and determinations of witness credibility are within the province of the factfinder. *Id.*

■ This court has long held that an independent contractor is one who contracts to do a job according to his own method and without being subject to the control of the other party, except as to the result of the work. *See, e.g., Johnson Timber Corp. v. Sturdivant*, 295 Ark. 622, 752 S.W.2d 241 (1988); *Moore and Chicago Mill & Lbr. Co. v. Phillips*, 197 Ark. 131, 120 S.W.2d 722 (1938); *W. H. Moore Lbr. Co. v. Starrett*, 170 Ark. 92, 279 S.W. 4 (1926). On the issue of control, this court has stated:

> The governing distinction is that if control of the work reserved by the employer is control not only of the result, but also of the means and manner of the performance, then the relation of master and servant necessarily follows. But if control of the means be lacking, and the employer does not undertake to direct the manner in which the employee shall work in the discharge of his duties, then the relation of independent contractor exists.

*Massey v. Poteau Trucking Co.*, 221 Ark. 589, 592, 254 S.W.2d 959, 961 (1953) (citing *Moore and Chicago Mill & Lbr. Co.*, 197 Ark. 131, 120 S.W.2d 722). There is no fixed formula for determining whether a person is an employee or an independent contractor; thus, the determination must be made based on the particular facts of each case. *Id.*

■ The following factors are to be considered in determining whether one is an employee or independent contractor:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Dickens v. Farm Bureau Mut. Ins. Co.*, 315 Ark. 514, 517, 868 S.W.2d 476, 477-78 (1994) (citing *Blankenship v. Overholt*, 301 Ark. 476, 786 S.W.2d 814 (1990) (citing RESTATEMENT (SECOND) OF AGENCY § 220)). *See also D.B. Griffin Warehouse, Inc. v. Sanders*, 336 Ark. 456, 986 S.W.2d 836 (1999). Of the foregoing, the right to control is the principle factor in determining whether one is an employee or an independent contractor. *Id.* It is the right to control, not the actual control, that determines the relationship. *Taylor v. Gill*, 326 Ark. 1040, 934 S.W.2d 919 (1996).

■ The factors pertaining to the nature of the worker's occupation and whether it is a part of the regular business of the employer comprise the "relative nature of the work" test, recognized in *Sandy v. Salter*, 260 Ark. 486, 541 S.W.2d 929 (1976). There, this court adopted Professor Larson's test for examining the relationship between the worker's occupation and the regular business of the employer. This test requires consideration of two factors: (1) whether and how much the worker's occupation is a separate calling or profession, and (2) what relationship it bears to the regular business of the employer. The more the worker's occupation resembles the business of the employer, the more likely the worker is an employee.

In the present case, the evidence demonstrated that during the years in question, Appellant employed truck drivers on its payroll to transport mobile homes from the seller's location to the buyer's land. The employee drivers were subject to workers' compensation coverage, and premiums were paid for them. Appellant also retained a number of truck drivers by contract to transport mobile homes using their own trucks. Appellant asserted that these contract driv-

ers were independent contractors for whom workers' compensation coverage was not required.

The trial court concluded that the drivers were employees based, in large part, on the degree of control that Appellant retained over them. Specifically, the trial court found that under the contracts, the drivers agreed to use their trucks exclusively in the business and service of Appellant, and that they could not use their trucks for a "trip lease" without Appellant's express consent. A "trip lease" is when the driver has the opportunity to haul or deliver for someone else on his trip back to his place of origin. Meanwhile, Appellant had the right to sublease the drivers' trucks. The trial court also found that: (1) the drivers had to paint their trucks in accordance with Appellant's specifications and were required to affix Appellant's insignia or other marks of identification on the trucks; (2) the trucks could only be driven by persons certified by Appellant as acceptable; (3) the drivers were authorized, as agents, to collect the monies due to Appellant for the shipping charges; (4) compensation was contingent upon the drivers providing bills of lading, log books, all tickets, permits, and copies of flagging tickets; (5) the drivers were required to pay all fuel use taxes, but Appellant would receive all credits and refunds on such taxes; and (6) the drivers were responsible for up to $350.00 for damage to the cargo.

Appellant argues that the trial court erred in relying on these contract provisions as bearing on the issue of the right to control. It claims that its contracts provided no more control than that mandated by the Interstate Commerce Commission's (ICC) regulations. Appellant particularly relies on 49 C.F.R. § 1057.12(c)(1) (1992),[1] which provides in part that equipment leases "shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease." Appellant asserts that the ICC has never viewed this exclusive-use requirement as having any bearing on the relationship of the parties. *See* section 1057.12(c)(4). Appellant relies on this court's holding in *Julian Martin, Inc. v. Indiana Refrig. Lines, Inc.*, 262 Ark. 671, 560 S.W.2d 228 (1978). While we agree that compliance with the ICC's regulations does not, as a matter of law, determine the relationship

---

[1] This regulation is now codified as 49 C.F.R. § 376.12(c)(1) (1999).

between the parties, we believe that Appellant's reliance on *Julian Martin* is misplaced.

■ There, a truck driver was injured while driving a truck owned by White County Ready Mix, leased to Julian Martin, and then subleased for one trip to Indiana Refrigeration Lines. The dispute was between the lessee and the sub-lessee as to which one was the driver's employer and thus responsible for compensation of his injuries. The lessee argued that the sub-lessee was responsible, in part, because the sub-lessee controlled the driver's activities under the ICC's regulations. This court disagreed: "Control of the leased equipment *does not operate as such complete control of the driver,* as to make the driver the employee of the lessee *as a matter of law*[.]" *Id.* at 678, 560 S.W.2d at 231 (emphasis added). The issue of the right to control the method and manner of the work is not a question of law to be determined by ICC regulations. Rather, when there is a "lease of fully operated equipment for the transportation of cargo on the public highways," the question of the driver's status is one of fact. *Id.*, 560 S.W.2d at 231-32. Thus, the existence of ICC regulations governing control of the equipment under the lease does not necessarily mandate a finding that the operator is an employee *or* an independent contractor. The question remains one of fact dependent upon the particular circumstances of each case.

Here, in addition to the facts set out above, the evidence showed that the contract drivers performed the same work as the employee drivers, with the only difference being that the employee drivers were given specific times and dates for pick up and delivery, and they did not have the option of declining particular moves. The contracts were initially for a term of thirty days, but were automatically renewed and continued thereafter unless terminated. Either party could terminate the contract by giving at least ten days' written notice. The trial court found significant the length of time that these drivers worked for Appellant, with the majority having done so for at least two years. The trial court also found significant the factor that the drivers were not engaged in a distinct occupation or business, as the greater weight of the evidence showed that these drivers did not engage in work other than hauling mobile homes for Appellant. The trial court also found that the work performed by the contract drivers was such an integral part of Appellant's business, that it could not operate without the contract drivers. The trial court relied on the fact that Appellant is in the business of

transporting mobile homes, and that the truck drivers are in the identical business. Thus, the trial court found that the truck drivers' work bears a significant relationship to Appellant's business under the "relative nature of the work" test.

■ Furthermore, contrary to Appellant's argument, the contracts here exceeded the amount of control specified in the ICC's regulations. For example, the exclusive-use provision found in section 1057.12(c)(1) does not specifically prohibit use of the trucks by the lessor-owners for trip leases. Indeed, the reason offered by Appellant in support of this provision was not that it was mandated by the regulations, but that Appellant likes to know where the drivers are in case they are needed for another move. Similarly, there does not appear to be any regulation requiring the lessor-owners to act as trustees or agents of the carrier for the purpose of collecting monies due for shipping charges. Thus, viewing the foregoing facts in a light most favorable to Appellee, we cannot say that the trial court was clearly erroneous in finding that the contract drivers were employees.

■ We find additional support for our holding in the trial court's determination that Appellant should be estopped from denying payment of the additional premiums regardless of the drivers' status. The evidence revealed that workers' compensation claims were made by five of the contract drivers during the period in question, and those claims were paid by Appellee. In one of those five cases, the trial court found that the claim was signed by Appellant's vice-president, Winston Chandler, and that Chandler never raised the issue of the driver's employment status until approximately two years after the claim was made and compensation had been paid. On another claim, the trial court found that Chandler had informed Appellee's claims adjuster that the company had withheld funds from the claimant's pay to pay for workers' compensation insurance. Furthermore, the trial court found that all of the drivers were treated in the same way, as it related to the assignment of jobs, the rate of pay, and the method and manner in which they performed each job. Accordingly, the trial court found that Appellant intended and elected to have the contract drivers, as a group, covered by its policy. Again, we cannot say that the trial court's ruling was clearly erroneous, and we affirm the judgment.

██ We do not reduce the judgment, as Appellant requests, by the premium amounts for those drivers working in Alabama, Georgia, Tennessee, and Virginia. It is not apparent that Appellant made this argument below. To the contrary, the abstract reflects that Appellant informed the trial court that it was not controverting the calculations of the premiums and that the only issue was the coverage itself. Accordingly, the issue is not preserved for appeal. *See Rainey v. Hartness*, 339 Ark. 293, 5 S.W.3d 410 (1999). Likewise, we do not address the additional points raised by the *Amicus Curiae*. The *Amicus Curiae* must take the case as it finds it and cannot raise issues not raised by the parties or introduce new issues at the appellate level. *See Ferguson v. Brick*, 279 Ark. 168, 649 S.W.2d 397 (1983) *(per curiam)*; *Mears v. Little Rock School Dist.*, 268 Ark. 30, 593 S.W.2d 42 (1980); *Equilease Corp. v. United States Fidelity & Guar. Co.*, 262 Ark. 689, 565 S.W.2d 125 (1978). These additional issues were not raised by either party, so they are not preserved for this court's review.

Lastly, because we affirm the trial court's determination that the drivers were employees, it is not necessary to review the alternative finding that the drivers were subcontractors. We do find it necessary, however, to point out that even if the drivers were subcontractors, Appellant, as the prime contractor, would not be responsible for payment of workers' compensation premiums for the subcontractors themselves, but only for those *employees of the subcontractors*, if any, for whom no compensation coverage was provided. *See* Ark. Code Ann. § 11-9-402(a) (Repl. 1996); *Hollingsworth & Rockwood Ins. Co. v. Evans*, 255 Ark. 387, 500 S.W.2d 382 (1973).

Affirmed.