CONAGRA FOODS, INC. *v.* Homer Otis DRAPER
and Colleen Draper

07-332 276 S.W.3d 244

Supreme Court of Arkansas
Opinion delivered February 14, 2008

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *David B. Vandergriff* and *Brian A. Vandiver*, for appellant.

*Blair & Stroud*, by: *H. David Blair*; and *Jerrie Grady*, for appellees.

JIM GUNTER, Justice. This appeal arises out of an automobile accident occurring on January 28, 2003, involving an automobile driven by Appellee Homer Otis Draper and a truck and trailer hauling Appellant ConAgra's poultry to its processing plant in Batesville. The truck and trailer were owned by Patterson–Salter Trucking, Inc. ("PST") and driven by Charlie Von Garrett. On appeal, ConAgra asks that we reverse the Sharp County Circuit Court's denial of its motion for directed verdict. In the alternative, ConAgra asks that we reverse and remand this case for a new trial because the use of AMI Civ. 209 (2008) incorrectly placed the burden on ConAgra to prove that PST was an independent contractor. We affirm the circuit court's rulings.

Homer and Colleen Draper ("the Drapers") filed suit against both PST and ConAgra in the Sharp County Circuit Court for damages arising out of personal injuries that he sustained in the accident. On June 18, 2004, ConAgra filed a motion for summary judgment arguing that it was entitled to judgment as a matter of law because PST was not its agent or employee. The circuit court granted ConAgra's motion. On September 7, 2005, the Arkansas Court of Appeals reversed and remanded the case to the circuit court, holding that genuine issues of material fact as to the nature of the relationship between ConAgra and PST precluded summary judgment on independent-contractor grounds. *See Draper v. ConAgra Foods, Inc.*, 92 Ark. App. 220, 212 S.W.3d 61 (2005).

Upon remand, ConAgra moved for directed verdict at the close of the Drapers' evidence and renewed the motion at the end of all of the evidence, arguing that the Drapers had failed to provide sufficient evidence to prove the issue of the extent of control ConAgra had over PST, whether PST was a distinct occupation or business, and whether poultry hauling was a part of ConAgra's regular business in 2003. The circuit court denied the motion for directed verdict.

A jury returned a verdict in favor of the Drapers, finding that PST was not an independent contractor at the time of the accident, that ConAgra was guilty of negligence that was a proximate cause of damages sustained by the Drapers, and that Homer Draper was also guilty of negligence, which was the proximate cause of damages sustained by him and Colleen Draper. On November 9, 2006, ConAgra filed a motion for new trial, arguing that the circuit court erred by giving the jury AMI Civ. 209 over ConAgra's objection because the burden of proof was improperly placed on ConAgra to show that an independent-contractor relationship

existed. On December 9, 2006, ConAgra's motion for new trial was deemed denied. ConAgra filed a timely notice of appeal on January 8, 2007. This case was certified to us by the Arkansas Court of Appeals on December 31, 2007.

## I. Sufficiency of the Evidence

For its first point on appeal, ConAgra argues that the circuit court erred in ruling that PST's independent-contractor status was a jury question. It further contends that the circuit court erred in denying its motions for directed verdict at the close of the Drapers' case and at the close of all the evidence, because there was no substantial evidence that PST was ConAgra's employee. Rather, ConAgra asserts that reasonable minds could not have differed as to PST's status as an independent contractor.

The Drapers respond, arguing that ConAgra is asking us to engage in a preponderance-of-the-evidence analysis when the only question presented here is whether there was substantial evidence to support a finding in favor of the Drapers. The Drapers assert that there is sufficient evidence to support the jury's finding that PST was not, at the time of the accident, acting as an independent contractor of ConAgra.

Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Crawford County v. Jones*, 365 Ark. 585, 232 S.W.3d 433 (2006); *Stewart Title Guar. Co. v. American Abstract & Title Co.*, 363 Ark. 530, 215 S.W.3d 596 (2005); *Ethyl Corp. v. Johnson*, 345 Ark. 476, 49 S.W.3d 644 (2001). Similarly, in reviewing the denial of a motion for JNOV, we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. *Id.* Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* It is not our place to try issues of fact; rather, we simply review the record for substantial evidence to support the jury's verdict. *Id.* In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.* A motion for directed verdict should be denied when there is a conflict in the evidence, or when the evidence is such that fair-minded people might reach different conclusions. *See McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (2007) (citing *Wal-Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991)).

The *Restatement Second of Agency* § 220(2) (1958) sets out factors that are to be weighed in drawing the line between independent contractor and employee:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;

> (b) whether or not the one employed is engaged in a distinct occupation or business;

> . . . .

> (h) whether or not the work is a part of the regular business of the employer;

*See also Blankenship v. Overholt*, 301 Ark. 476, 786 S.W.2d 814 (1990) (citing *Alpha Zeta Chapter of Pi Kappa Alpha Fraternity v. Sullivan*, 293 Ark. 576, 740 S.W.2d 127 (1987)).

In the present case, ConAgra moved for directed verdict at trial, arguing that the Drapers failed to produce sufficient evidence on the three above factors: the extent of control ConAgra could exercise over the details of the work; whether poultry hauling was a part of ConAgra's regular business; and whether PST was engaged in business. Therefore, we will only address these three factors.

### A. Control

On appeal, ConAgra asserts that it had no control over the details of the work of PST or its driver. First, ConAgra contends that the independent-contractor agreement clearly demonstrates that PST and its driver were independent contractors. Second, ConAgra argues that the actions of PST and ConAgra clearly demonstrate that drivers employed by PST were not ConAgra's employees because: (1) PST drivers were not controlled by ConAgra; (2) PST controlled its own employees; (3) PST's control was not diminished by its agreement to reduce bruising of or death to ConAgra's birds; (4) PST's control was not diminished by its agreement to haul and deliver ConAgra's birds at specific times and dates; and (5) ConAgra seldom had contact with PST's drivers.

In response, the Drapers argue that ConAgra's reliance on the terms of the written agreement are misplaced because the real test is not the written agreement, but rather the conduct of the

parties. They contend that, because the relationship of ConAgra and PST should be defined by the conduct of the parties, the determination of whether PST is an independent contractor or an employee is highly factual in nature and therefore properly entrusted to a jury. They further argue that there is substantial evidence to conclude that ConAgra closely controlled the activities of the drivers furnished to it by PST.

We have long held that an independent contractor is one who contracts to do a job according to his own method and without being subject to the control of the other party, except as to the result of the work. *See Ark. Transit Homes, Inc. v. AETNA Life & Cas.*, 341 Ark. 317, 16 S.W.3d 545 (2000); *Johnson Timber Corp. v. Sturdivant*, 295 Ark. 622, 752 S.W.2d 241 (1988); *Moore & Chicago Mill & Lbr. Co. v. Phillips*, 197 Ark. 131, 120 S.W.2d 722 (1938); *W.H. Moore Lumber Co. v. Starrett*, 170 Ark. 92, 279 S.W. 4 (1926). The governing distinction is that if control of the work reserved by the employer is control not only of the result, but also of the means and manner of the performance, then the relation of master and servant necessarily follows. But if control of the means be lacking, and the employer does not undertake to direct the manner in which the employee shall work in the discharge of his duties, then the relation of independent contractor exists. *See Ark. Transit Homes, supra* (citing *Massey v. Poteau Trucking Co.*, 221 Ark. 589, 254 S.W.2d 959 (1953)). The right to control is the principle factor in determining whether one is an employee or an independent contractor. *Id.* It is the right to control, not the actual control, that determines the relationship. *Id.* (citing *Taylor v. Gill*, 326 Ark. 1040, 934 S.W.2d 919 (1996)).

Although a written contract creates the relation of employer and independent contractor, such relation may be destroyed by conduct of the employer through the direction of means and methods of producing physical results, and it becomes a question of fact for the jury if there is any substantial evidence to show that such conduct became operative. *Johnson Timber Corp. v. Sturdivant*, 295 Ark. 622, 752 S.W.2d 241 (1988) (citing *Ozan Lumber Co. v. McNeely*, 214 Ark. 657, 217 S.W.2d 341 (1949)). The relationship may be created by express contract, but this is not essential; it may be created as well by conduct, which shows that the parties recognize that one is the employer, or master, and that the other is the employee or servant. *Howard v. Dallas Morning News, Inc.*, 324 Ark. 91, 918 S.W.2d 178 (1996) (citing *Karcher Candy Co. v. Hester*, 204 Ark. 574, 163 S.W.2d 168 (1942)). Moreover, when one is

sought to be held responsible for the tortious act of another under the principle of *respondeat superior*, the question of responsibility will not depend entirely upon the existence of some actual contractual relationship of master and servant. It is sometimes allowable to prove the relation of master and servant by the fact that one performs service for another. *Id.*

In the present case, ConAgra and PST entered into an "Independent Contractor Agreement." PST is referred to in the agreement as "Independent Contractor." PST agreed to "indemnify and hold ConAgra harmless against all expenses, obligations or losses of any kind whatsoever for claims, debts, personal injuries or property damage arising out of the work to be performed by Independent Contractor for ConAgra." PST also agreed to "pay for his own expenses, taxes and fees in connection with performance of this contract, shall obtain and pay for any required permits or leases and shall comply with all applicable government laws and regulations." The agreement further provided that PST would employ all labor and furnish all equipment necessary to perform the contract. Paragraph nine of the agreement states:

> Nothing contained herein should be construed as reserving or granting ConAgra any rights to exercise control over the method or manner in which Independent Contractor performs this contract, it being explicitly understood between ConAgra and Independent Contractor that Independent Contractor is free to use his best judgment in the method and manner of performing this contract to achieve the results specified.

The agreement further states that PST "agrees to perform the contract in a manner as to reduce to a minimum bruising of or death to the broilers and to haul and deliver to processing plants the number of chickens at specific dates and times as ConAgra specifies."

ConAgra contends that, along with the written agreement, there is substantial evidence proving that it did not exert control over PST. We have addressed the issue of control in several cases. In *Williams v. Nucor-Yamato Steel Co.*, 318 Ark. 452, 886 S.W.2d 586 (1994), we stated that "[i]t is not enough that [the employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is

controlled as to his methods of work, or as to operative detail. There must be a retention of a right of supervision that the contractor is not entirely free to do the work his own way." *Id.* (citing Comment c, *Restatement Second of Torts* § 414 (1965)). In *Moore, supra,* we held that in contracts for the performance of work, the inclusion of such phrases as, "work is to be done in accordance with instructions," "under direction and supervision," and the like does not relate to the method or manner in which work is to be done, and does not govern the details of the physical means by which the work is to be performed, or change the status of independent contractor to that of master and servant.

 In the present case, there is sufficient evidence that ConAgra exerted the control of an employer of PST by instructing PST on how to protect ConAgra's poultry. The Independent Contractor Agreement provided that "[a]lthough Independent Contractor is free to use his best judgment in performing the contract as specified in paragraph nine, he hereby agrees that he will perform the contract in such a manner as to reduce to a minimum bruising of or death to the broilers." While this provision of the agreement leaves the manner in which PST is to perform the contract to the judgment of PST, there was testimony given at trial that showed that ConAgra gave specific instructions to PST on how to protect the poultry. According to Jack Patterson's testimony, PST was required to switch to metal cages in order to continue the business relationship with ConAgra. When the weather was cold, ConAgra required PST to install front boards and side boards on the trailers. Garrett testified that in hot weather, ConAgra would instruct him where to park the trailer and whether to put it under fans or a sprinkler. This testimony shows that with regard to the protection of the poultry, PST was not entirely free to do the work in its own way. *See Williams, supra.* Therefore, there is sufficient evidence that ConAgra did exert control over the means by which PST would protect the poultry, which supports the jury's finding of an employer-employee relationship.

### B. Whether PST is a business

The next factor to consider is "whether or not the one employed is or is not a business." *See Restatement Second of Agency* § 220(2)(j). ConAgra asserts that this factor favors its argument that PST was an independent contractor because PST was a separate corporation engaged in a distinct business. ConAgra asserts that

PST was a trucking company, while ConAgra was a vertically integrated poultry company. The Drapers argue that PST was not a separate business because its sole function was to supply equipment and drivers to ConAgra.

In *Arkansas Transit, supra,* we affirmed the circuit court's ruling that contract drivers who did not engage in work other than hauling mobile homes for the appellant's business were not engaged in a distinct occupation or business. Here, Patterson testified that the purpose of creating PST was to provide trucks and drivers to Banquet Foods, which later became ConAgra. PST did not have any customers other than ConAgra. In fact, PST was so dependent upon maintaining its deal with ConAgra that PST went out of business when its agreement with ConAgra was terminated. Therefore, fair-minded people could come to the conclusion that PST was not engaged in a distinct occupation or business because PST's sole purpose was to provide trucks to ConAgra, its only customer. *See McMickle, supra.*

### C. Whether transporting poultry was part of ConAgra's regular business

In its motion for directed verdict, ConAgra also argued that the Drapers failed to provide sufficient evidence that poultry hauling was part of ConAgra's regular business, *see* § 220 (2)(h), because it was in the business of "raising, processing and selling poultry products." The Drapers respond, arguing that transportation of poultry is part of ConAgra's regular business because ConAgra's control over the transportation of the poultry is essential to the efficient operation of its business, and it exercised control over PST to ensure timely delivery of undamaged chickens to its processing plant.

The factors pertaining to the nature of the worker's occupation and whether it is a part of the regular business of the employer comprise the "relative nature of the work" test, recognized in *Sandy v. Salter,* 260 Ark. 486, 541 S.W.2d 929 (1976). There, we adopted a test for examining the relationship between the worker's occupation and the regular business of the employer. This test requires the consideration of two factors: (1) whether and how much the worker's occupation is a separate calling or profession, and (2) what relationship it bears to the regular business of the employer. The more the worker's occupation resembles the business of the employer, the more likely the worker is an employee. *Id.*; *see also Ark. Transit, supra.*

■ Here, regarding the first factor of the test, ConAgra contracted with PST and another company, Broadwater, to haul its poultry rather than hiring its own employees to perform the task. ConAgra is a poultry company while PST is a trucking company. The contractors were required to furnish ConAgra proof of complete workers' compensation insurance coverage and general liability insurance. Regarding the second factor of the test, the sole purpose of PST was to provide trucks to ConAgra. PST had been in business, hauling poultry for ConAgra, for thirty-three years until the agreement between ConAgra and PST was terminated on June 1, 2003. Patterson testified that PST went out of business shortly after the agreement between it and ConAgra was terminated. Based on these facts, fair-minded people might reach different conclusions as to whether transporting poultry was part of ConAgra's regular business. *See McMickle, supra.*

■ We have held that where the nature of the relation between employer and employee depends upon the meaning of a written instrument collaterally introduced in evidence, and the effect of such instrument depends, not only upon its construction, but also upon extrinsic facts and circumstances, the inferences of fact to be drawn from the instrument must be left to the jury. *See Johnson Timber, supra.* Here, we conclude that the facts and circumstances established by proof, when considered together, are sufficient to present questions of fact to be decided by the jury. *Id.* Therefore, we reject ConAgra's argument that the circuit court erred in ruling that PST's independent-contractor status was a jury question.

■ Further, we hold that there was substantial evidence to support the jury's verdict that PST was not an independent contractor. If there is any substantial evidence to support the jury's verdict, we affirm. *Id.* As stated above, the control exerted by ConAgra regarding the manner in which PST protected the poultry coupled with the facts supporting the Drapers' argument that PST was not a separate business could lead a fair-minded person to find that PST was not an independent contractor. Thus, in viewing the evidence and all inferences most favorably to the Drapers, as we must do in the denial of a motion for a directed verdict, *see Blankenship, supra,* we hold that there was substantial evidence to support the jury's verdict. Accordingly, we affirm the circuit court's denial of ConAgra's motion for directed verdict.

## II. AMI Civ. 209

For its second point on appeal, ConAgra asserts that the circuit court erred in giving the jury instruction, AMI Civ. 209, because this instruction placed the burden of proof on ConAgra to prove that PST was an independent contractor. ConAgra contends that, under our case law and the facts of this case, the burden of proof should have been placed on the Drapers to prove that PST was ConAgra's employee pursuant to AMI Civ. 207 (2008). The Drapers respond, arguing that we have previously rejected this same argument in *Ben M. Hogan Co., Inc. v. Nichols*, 254 Ark. 771, 496 S.W.2d 404 (1973). They further assert that ConAgra's argument would require the circuit court to weigh and evaluate the evidence in determining whether AMI 209 should be given, which cannot be done without encroaching on the jury's exclusive power to weigh and evaluate evidence.

AMI 209 provides that, if the principal contends that the alleged agent was an independent contractor, the principal has the burden of proof. The Note on Use to AMI 209 states that this instruction should only be used "if it is undisputed that the alleged agent was performing a service for and was being compensated by the principal. Otherwise, use AMI 207." When it is demonstrated that the person causing an injury was at the time rendering service for another and being paid for that service, "and the facts presented are as consistent with the master–servant relationship as with the independent contractor relationship," then the burden is on the one asserting the independence of the contractor to show the true relationship of the parties. *See Johnson, supra* (citing *Schuster's Inc. v. Whitehead*, 291 Ark. 180, 722 S.W.2d 862 (1987)). "It is generally held by the courts, including our own, that if the employer claims that an employee is an independent contractor for whose acts he is not responsible, the burden is upon him to show that fact." *Id.* (citing *Phillips Coop. Gin Co. v. Toll*, 228 Ark. 891, 311 S.W.2d 171 (1958)).

The Drapers rely on *Ben M. Hogan Co., supra*, for its assertion that AMI 209, placing the burden of proof on ConAgra, was the proper instruction. However, this case does not provide any clarity on this issue. All that is mentioned about AMI 209 is the following:

> There was no error in submitting to the jury the question of whether Cumbie was an agent or employee of Hogan. There was no reversible error in the giving of AMI 209 over the objection made by appellant Hogan, even though Hogan contended

throughout the trial that Steele, the owner of the truck driven by either Steele or Cumbie, was an independent contractor and that Cumbie was the employee of Steele. The only objection to the giving of this instruction was that it only applies when the facts are as consistent with the master-servant relationship as the independent contractor relationship, and that, if given, the jury should be so advised.

*Id.* at 789, 496 S.W.2d at 416. This language simply suggests that there was no reversible error in giving AMI 209 because Hogan's only objection was that if the instruction was given, the jury should be advised that it only applies when the facts are as consistent with the master-servant relationship as the independent-contractor relationship.

Here, ConAgra objected to the use of AMI 209 at trial and tendered AMI 207 in its place, as follows:

Homer Otis Draper and Colleen Draper contend and have the burden of proving that at the time of the occurrence [PST] was acting within the scope of its authority as an agent of Con-Agra Foods, Inc.

If you so find, then any negligence on the part of, or chargeable to, [PST] would be charged to Con-Agra Foods, Inc.

This instruction clearly places the burden on the Drapers, rather than on ConAgra. The Note on Use to AMI 207 states, "[i]f it is undisputed that the alleged agent was performing a service for and was being compensated by the principal, use AMI 209."

■ ConAgra admits that PST performed the service of hauling poultry for ConAgra and that PST was being paid for that service. Therefore, according to the Notes on Use in AMI 207 and 209, AMI 209 is the proper instruction. ConAgra asserts that the facts in this case are not as consistent with the master-servant relationship as with the independent-contractor relationship. We follow our general rule that, if the employer claims that an employee is an independent contractor for whose acts he is not responsible, the burden is upon him to show that fact. *See Johnson, supra.* Therefore, we hold that the circuit court did not err in giving AMI 209. Accordingly, we affirm the circuit court's rulings.

Affirmed.