SLIP OPINION

Cite as 2015 Ark. App. 198

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-693

| | |
|---|---|
| BARTON AG CENTER, INC., VERLON SPENCER, and GREENWAY EQUIPMENT, INC. <br> APPELLANTS | Opinion Delivered MARCH 18, 2015 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. CV-10-2219] |
| V. | HONORABLE WENDELL GRIFFEN, JUDGE |
| WILLIAM CASE <br> APPELLEE | AFFIRMED IN PART; REVERSED IN PART |

**KENNETH S. HIXSON, Judge**

A Pulaski County jury found that Verlon Spencer, Barton AG Center, Inc., and Greenway Equipment, Inc. (sometimes referred to collectively as "Greenway"[1] or as appellants) committed the tort of conversion with respect to two John Deere tractors owned by appellee William Case. The jury awarded compensatory and punitive damages against Greenway. Greenway appeals, raising two points for reversal: (1) that the trial court erred in submitting the conversion claim against them to the jury; and (2) that the trial court erred in submitting the punitive damages claim against them to the jury. We affirm the compensatory damages awarded against appellants on the conversion claim, but we reverse the punitive damages.

---

[1]The appellants' brief refers to Spencer, Barton AG Center, and Greenway collectively as "Greenway."

SLIP OPINION

Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *Buck v. Gillham*, 80 Ark. App. 375, 96 S.W.3d 750 (2003). The tort of conversion is committed when a party wrongfully commits a distinct act of dominion over the property of another that is inconsistent with the owner's rights. *Id.* The intent required is not conscious wrongdoing, but rather an intent to exercise dominion or control over the goods that is inconsistent with the plaintiff's rights. *Id.* Conversion can occur even where the party who took the property is operating under a mistaken belief. *Schmidt v. Stearman*, 98 Ark. App. 167, 253 S.W.3d 35 (2007).

The appellant's arguments on appeal challenge the trial court's denial of their motions for directed verdict and motion for judgment notwithstanding the verdict. The standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Med. Assurance Co., Inc. v. Castro*, 2009 Ark. 93, at 3, 302 S.W.3d 592, 595 (quoting *ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 276 S.W.3d 244 (2008)). Similarly, in reviewing the denial of a motion for judgment notwithstanding the verdict, the appellate court will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. *Id.* Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* In determining whether there is substantial evidence, the court views the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf the judgment was entered. *Id.*

In 2008, William "Buddy" Case was working in the farming and dirt-moving business. He was a member of a limited liability company known as A&B Land Development. The members of the limited liability company were Buddy Case and Alex Liles.[2] Michael Booth worked part-time for A&B Land Development as a subcontractor. An opportunity arose in 2008 for A&B Development to move dirt for a housing project in Conway, Arkansas. Mr. Case testified that he furnished the equipment and Michael Booth did the work. A&B Land Development did not have the appropriate heavy equipment to perform the project. Buddy Case purchased a two-wheel drive John Deere 4840 Row Crop Tractor from Barton AG Center.[3] The salesman for Barton AG was Verlon Spencer. Both Buddy Case and Michael Booth discussed the purchase with Verlon Spencer.[4] The sales price of the John Deere 4840 was $17,500. Buddy Case made a $2,000 down payment and financed the balance of $15,500 through John Deere Credit. All of the financing documents and the loan contract were signed by "William A. Case" in his individual capacity.

At some point during the project, a John Deere 8960 tractor previously owned by Buddy Case broke down. As a result, Buddy Case bought a replacement four-wheel drive John Deere 8970 from Barton AG again through the salesman, Verlon Spencer. The sales

---

[2]Alex Liles is the stepson of Michael Booth, who was one of the defendants in this case.

[3]Barton AG Center was later acquired by Greenway Equipment. The parties to this lawsuit stipulated that Greenway Equipment would accept liability for Barton AG Center as its successor in interest.

[4]Verlon Spencer testified at trial that both Case and Booth came into his office to purchase the tractor, that he was told that Case and Booth were equal partners, and that the company that was going to use the equipment was A&B Land Development.

SLIP OPINION

price of the John Deere 8970 tractor was $49,500. Buddy Case made an $8,000 down payment and financed the balance of $41,500 through John Deere Credit. All of the financing documents and loan contract were signed by "William A. Case" in his individual capacity.

By 2009, A&B Land Development was not successful, and Case wanted out of the business. Booth approached John Peters with the opportunity to purchase the two John Deere tractors at issue in this case, and Peters agreed to buy the tractors. Booth and Peters went to Barton AG Center in September 2009, and Verlon Spencer assisted in the sale of the tractors to Peters. The tractors were financed with John Deere Credit in the sole name of John Peters.[5] The evidence suggested that Spencer may have been operating under the mistaken assumption that Booth was entitled to possess the tractors when he assisted with the Peters transaction. Peters would ultimately default on the loan contract and finance agreement with John Deere Credit, and the tractors were repossessed by Barton AG Center's successor, Greenway Equipment, sometime in 2013.

Case did not authorize the sale of the tractors to Peters and, in fact, had no knowledge of the transaction until October 2009 when he received a letter from John Deere Credit notifying him that the debts related to the John Deere 4840 and the John Deere 8970 had been satisfied. Case attempted to discuss the sale of the tractors with employees of Barton AG

---

[5]The evidence indicated that Booth was not credit worthy to be a party to the 2008 purchase by Case or the 2009 purchase by Peters.

Center, including Verlon Spencer, but no one would discuss the matter with him citing a "privacy act."

In November 2009, Booth and Case went to attorney Skip Davidson to discuss the sale of Case's interest in A&B Land Development limited liability company to Booth. Davidson drafted a sales agreement ("Sales Agreement") that Booth and Case each signed. The sales price for Case's interest in the limited liability company was $25,000 plus payment and performance of other items by Booth enumerated in the Sales Agreement. The Sales Agreement also provided that Booth would cause Buddy Case's name to be removed from the debt related to the John Deere 4840 and that Booth would pay Case $2,909.87. Case testified that this $2,909.87 related to some expenses Case had paid for repairs on the John Deere 4840. The Sales Agreement also provided that Booth would cause Buddy Case's name to be removed from the debt related to the John Deere 8970 and that Booth would pay Case $8,000. It was undisputed at trial that Booth had not made any of these payments to Case, although Booth did cause Buddy Case's name to be removed from the two John Deere loan contracts.

Based on these facts, Case filed this lawsuit. The operative complaint is the fourth amended complaint filed in August 2013. Case sued John Peters, Michael Booth, Barton AG Center, Inc., its employee Verlon Spencer, and its successor in interest Greenway Equipment, Inc. The complaint set forth causes of action for breach of Sales Agreement (against Booth), conversion (against all defendants), trespass to chattels (against Booth and Peters), civil conspiracy (against all defendants), unjust enrichment (against all defendants), negligent

supervision and retention (against Barton AG and Greenway), deceptive trade practices (against Spencer, Barton AG, and Greenway), invasion of privacy by public disclosure of private facts (against Spencer, Barton, and Greenway), and failure to comply with the Arkansas Uniform Commercial Code (against Barton AG and Greenway). Case sought compensatory and punitive damages.

The case proceeded to trial by jury on March 11–13, 2014. At the close of the plaintiff's case-in-chief, the trial court granted the motions for directed verdict of the appellants on the counts of failure to comply with the Arkansas Uniform Commercial Code, invasion of privacy, and deceptive trade practices. Additionally, Case abandoned his claims for unjust enrichment and negligent supervision and retention. The appellants asked the trial court to grant a directed verdict on the claims of civil conspiracy, conversion, and punitive damages, but these motions were denied. All defendants rested without calling any additional witnesses. The appellants renewed their motions for directed verdicts. The trial court granted the motion for directed verdict on the civil conspiracy count. The trial court denied the motions for directed verdict on the claims for conversion and punitive damages. Additionally, the trial court dismissed John Peters from the case.

The case was submitted to the jury on the conversion claim for compensatory and punitive damages against Booth, Spencer, Barton AG and Greenway. The jury returned a verdict finding that Booth, Spencer, Barton AG and Greenway were liable for conversion and awarded compensatory damages in the amount of $8,000. The jury apportioned fault on the conversion claim 60 percent on the appellants, Spencer, Barton AG and Greenway, and 40

percent on Booth. The jury also returned a verdict on the punitive damages against appellants, Spencer, Barton AG and Greenway, and awarded $25,000 to Case.[6] A judgment was entered on March 25, 2014.

Following the entry of the judgment, the appellants filed a motion for judgment notwithstanding the verdict, wherein they challenged both the verdict for conversion and the verdict for punitive damages. The trial court denied the motion and the appellants filed their timely notice of appeal. In this appeal, the appellants assign error to the trial court's denial of their motions for directed verdict on the conversion and punitive damages claims, as well as the trial court's denial of their motion for judgment notwithstanding the verdict on these claims.

For their first argument on appeal, the appellants contend that there was insufficient evidence to support Case's conversion claim. The appellants argue that there was no proof that Barton AG/Greenway exercised possession or dominion of the two tractors when the tractors were sold to Peters in September 2009, and that because appellants did not possess the tractors there was no basis to support Case's claim for conversion.

We need not determine whether the sale and financing of the John Deere tractors in 2009 to John Peters constituted a conversion of the tractors by the appellants because there was testimony at trial that Greenway took possession of the tractors in 2013. Although the

---

[6]Case's claim for breach of the Sales Agreement against Booth was also submitted to the jury. The jury returned a verdict finding that Booth breached the Sales Agreement with Case and awarded compensatory damages to Case in the amount of $53,976. Booth did not appeal the $53,976 judgment on the breach of the Sales Agreement, his apportionment of fault for conversion, or punitive damages.

primary thrust of Case's complaint was that the appellants committed conversion in 2009 when they assisted Booth and Peters in the sale and financing of the tractors, in paragraphs 76 and 77 of the conversion count in his fourth amended complaint Case also alleged:

> 76. Upon information and belief, Barton (now Greenway) *is in possession* of Tractors One and Two, and holding them in derogation of Case's rights in Des Arc, Prairie County, Arkansas.
> 77. Defendants Barton and Greenway *are intentionally* covertly *possessing*, taking over, and *exercising dominion and control* over Tractors One and Two that are the subject of this litigation in violation of Case's rights thereto. (Emphasis added.)

When appellants made their motion for directed verdict on the conversion count, they argued that there was no testimony that the tractors had been repossessed; but, that was incorrect. Booth testified that, as a result of a default on Peter's 2009 loan contract and finance agreement, Greenway picked up the tractors in July or August 2013. Further, Case took and introduced photographs of the two John Deere tractors located at the Greenway dealership in Des Arc, Arkansas. In denying appellants' directed-verdict motion on the conversion count, the trial court cited proof that the tractors were in actual possession of appellants and stated, "If Mr. Case asserts a possessory right as to those two tractors and the two tractors are held on property owned by Barton AG/Greenway, how does that not present a jury question as to whether or not Barton AG/Greenway are exercising dominion or control over the tractors in violation of Mr. Case's rights?" It was, at least partially, based on this premise that the trial court allowed the claim for conversion to be submitted to the jury.

We hold that the trial court committed no error in denying appellant's directed-verdict motion as to conversion because there was substantial evidence to support Case's conversion claim. Although appellants argued to the trial court, and now to this court, that there was no

evidence that appellants ever had possession of the tractors, that argument fails because there was testimony that Greenway took actual possession of both tractors in 2013.[7] Based on these facts, a fact question was presented as to whether there was a conversion committed against Case. Therefore, we affirm the compensatory damages awarded against appellants on the conversion claim.

Appellants' remaining argument is that there was insufficient evidence to sustain the jury's $25,000 award for punitive damages. We agree.

In conversion cases, punitive damages are not recoverable simply because the defendant intentionally exercised control or dominion over the plaintiff's property. *City Nat'l Bank of Fort Smith v. Goodwin*, 301 Ark. 182, 783 S.W.2d 335 (1990). Simply put, one cannot recover punitive damages based on the tort of conversion alone. *Id*. Instead, the plaintiff must show that the defendant intentionally exercised control or dominion over the plaintiff's property for the purpose of violating his right to the property or for the purpose of causing damage. *Id*. Additionally, the proof must rise to the level of clear and convincing evidence. *See* AMI Civ. 2218 (2014). Clear and convincing evidence is proof that produces a firm conviction that the allegation is true. *See* AMI 2218 (2014); *Carter v. Four Seasons Funding Corp.*, 351 Ark. 637, 653, 97 S.W.3d 387, 395 (2003).

On this record, we hold that there was no substantial evidence to demonstrate that the appellants' exercise of dominion over Case's property was for the purpose of violating Case's

---

[7]The issue of whether the repossession by Greenway constituted a conversion of Peters's property is not before the court.

rights or causing him damage. The uncontroverted testimony showed that Case wanted to sell the tractors and be released from the debt obligations, and that appellants were made aware of this fact. Spencer testified that he was under the impression that Booth and Case were equal partners with equal rights to dispose of the tractors, and he was led to believe that the financing of the tractors and consequential release of Case's debt in 2009 benefitted Case. And when Greenway later repossessed the tractors from Peters in 2013, there was no suggestion that this constituted anything more than Greenway's exercise of its rights under the financing agreement as opposed to any intent to harm Case. In consideration of these circumstances, we reverse the punitive damages awarded by the jury.

Affirmed in part; reversed in part.

VIRDEN and HARRISON, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, for appellants.

*Walker Law Firm, PLLC*, by: *Kent Walker*, for appellee.